IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

MATTHEW MARTINEZ, as Personal
Representative of the ESTATE OF MARK
MANUEL MARTINEZ, Deceased, RAE-ANNA
MARTINEZ, and RAQUEL MARTINEZ,

      Plaintiffs,

v.                                                  CV 14-00758 JAP/WPL

STANDARD INSURANCE COMPANY and
WINDSTREAM COMMUNICATIONS, INC.,

      Defendants.

## ORDER

On the morning of May 26, 2012, Mark Martinez was riding a Harley Davidson motorcycle north on Highway 84/285 in Santa Fe County when the motorcycle spun out of control and Mr. Martinez was killed. The Santa Fe County Sheriff's Office investigated the accident and noted the existence of high winds at the time of the accident, and further noted that alcohol did not appear to be a contributing factor to the accident. The Office of the Medical Investigator's ("OMI") report stated that Mr. Martinez died as a result of the multiple blunt force injuries he received in the accident. The OMI also reported that Mr. Martinez had a femoral blood alcohol content of .104g/100mL, and a vitreous blood alcohol content of 0.117 g/100mL.

At the time of the accident, Mr. Martinez worked for Windstream Communications, Inc., and was enrolled in Windstream's accidental death and dismemberment plan, an insurance plan governed by the Employee Retirement Income Security Act ("ERISA"). Standard Insurance Company both insured and administered the plan. Mr. Martinez's named beneficiaries submitted a claim for benefits under the plan. Standard's claims analyst Mike Graham had the case

reviewed by Dr. Bradley Fancher, an internal medicine doctor who had worked as a consultant for Standard for over twelve years. Dr. Fancher concluded that Mr. Martinez was legally intoxicated at the time of the accident and that it was probable that the intoxication caused or contributed to his accident. Standard denied the claim for benefits, relying upon an exclusion in the policy for an accident that is caused or contributed to by the voluntary use or consumption of alcohol.

Plaintiffs appealed the denial, and the appeal was assigned to Ron Krull, a benefits review specialist. During the appeal, Krull obtained an opinion from Dr. Steven Beeson, another internal medicine doctor who had worked as a consultant for Standard for over fourteen years. Dr. Beeson concluded that Mark Martinez was intoxicated and that his intoxication significantly contributed to his accident and subsequent death. Plaintiffs complain that Dr. Beeson's report misstated the age of Mr. Martinez, misstated Mr. Martinez's blood alcohol content, and was not reviewed or signed by Dr. Beeson. Nevertheless, Standard upheld its prior determination that Plaintiffs are not entitled to benefits because voluntary use or consumption of alcohol caused or contributed to the accident of May 26, 2012.

At issue now is Plaintiffs' request for discovery on Standard's dual-role conflict as administrator and payor of the insurance plan. (Doc. 21.) Plaintiffs and Standard agree that Standard operated under a dual-role conflict of interest in considering Plaintiffs' claim and that the court will review Standard's decision to deny benefits for an abuse of discretion. Plaintiffs claim they are entitled to discovery because Standard: 1) used the wrong policy form to deny coverage; 2) relied upon physician consultants with whom it had a long-term financial relationship to deny benefits; 3) applied an impermissible per se rule to deny benefits; 4) developed no evidence to refute evidence in the administrative record that the accident was

caused by high winds and perhaps speed; and 5) disregarded evidence in the record. Standard, for its part, argues that discovery about a dual-role conflict is inappropriate except in the most unusual cases, according to the Tenth Circuit, and this is not one of those unusual cases where conflict discovery is warranted.

In 2010, the Tenth Circuit recognized that it had failed to provide clear guidance to district courts regarding the appropriate standard for resolving discovery disputes in ERISA cases where courts review an administrator's decision for abuse of discretion. *Murphy v. Deloitte & Touche Group Ins. Plan*, 619 F.3d 1151, 1157 (10th Cir. 2010). The circuit made clear that a district court must weigh the conflict of interest in its abuse of discretion analysis when an administrator operates under a dual-role conflict of interest, "but it must allocate the conflict more or less weight depending on its seriousness." *Id*. A conflict of interest is just one of many factors in determining whether denial of a claim is an abuse of discretion, and the significance of the conflict will depend upon the circumstances of the case. *Metropolitan Life Ins. Co. v. Glenn*, 554 U.S. 105, 116 (2008); *Murphy*, 619 F.3d at 1157 n.1, 1163. While "discovery related to the scope and impact of a dual role conflict of interest may, at times, be appropriate," it "may often prove inappropriate." *Murphy*, 619 F.3d at 1162-63. In determining whether to allow discovery, the court should consider that ERISA seeks to ensure a speedy, inexpensive, and efficient resolution of claims, and in determining whether discovery is overly costly or burdensome in light of its benefits, the court will need to consider the necessity of the discovery. *Id.* at 1163. "For example, the benefit of allowing detailed discovery related to the administrator's financial interest in the claim will often be outweighed by its burdens and costs because the inherent dual role conflict makes that financial interest obvious . . . ." *Id*.

Applying these principles to this case, I find that Plaintiffs are entitled to limited discovery concerning Standard's relationship with and payments to Dr. Fancher and Dr. Beeson. As the Supreme Court recognized, consulting physicians repeatedly retained by an insurer may have an incentive to deny claims in order to preserve their consulting relationship with that insurer. *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 832 (2003). Standard does not deny that it has had a long-term relationship with both physicians. Further, it appears that Dr. Fancher served as Standard's medical director in the past. *Clausen v. Standard Ins. Co*., 961 F. Supp. 1446, 1448-49 (D. Colo. 1997). I assume that the Administrative Record does not disclose whether Standard took steps to insulate these physicians from Standard's obvious financial interest. *Murphy*, 619 F.3d at 1163 n.7. Thus, Plaintiffs may submit up to ten interrogatories and ten requests for production that are limited to determining: the length of time that Dr. Fancher and Dr. Beeson have had a relationship with Standard and details about that relationship; any instructions or guidelines given to the physicians by Standard; how the physicians are compensated by Standard; the amount of compensation the physicians received from Standard for the five years before they rendered their opinions in this case; and how much of the physician's income for the five years before they rendered their opinions in this case was generated by performing consulting work for Standard. The parties shall agree on an appropriate confidentiality order for this information, and if they fail to do so, shall notify me about their dispute.

Plaintiffs are not entitled to the other, more wide-ranging, discovery they seek. This is not a situation where the consultants reviewed voluminous medical records and are accused of picking and choosing what records to rely upon, or where they insisted upon objective evidence of disability when the plan did not contain specific requirements for objective medical evidence.

*See, e.g.*, *Maronde v. Sumco USA Grp. Long-Term Disability Plan*, 322 F. Supp. 2d 1132, 1139 (D. Or. 2004). Plaintiffs argue that the use of the wrong policy form and the mistakes in Dr. Beeson's report suggest that Standard's review of their claim was less than thorough. Standard did not deny Plaintiffs' claim based upon use of the wrong policy form, but rather made its decision based upon the policy definition of "Loss" and the alcohol exclusion. Further, whether Standard thoroughly reviewed Plaintiffs' claim "can be evaluated based on the administrative record." *Murphy*, 619 F.3d at 1163.

Plaintiffs also seek discovery into Standard's interpretation and application of the alcohol exclusion in other cases and statistical data concerning the number of files sent to the physicians and the number of times that the physicians found claimants not entitled to benefits.[1] These requests run head long into the circuit's recognition that the benefit of discovery into whether other cases are comparable and relevant to showing bias in this case "is likely in all but the most unusual cases to be outweighed by the burdensomeness and costs involved." *Id.* at 1164 n.9. Plaintiffs bear the burden of demonstrating that extra-record discovery is appropriate in this case. *Id.* at 1163. Given New Mexico's decision to make it unlawful for a person to drive a vehicle in the state if the person has an alcohol concentration of eight one hundredths or more in the person's blood or breath, N.M. STAT. ANN. § 66-8-102(C) (West 2014), I find that discovery into Standard's interpretation and application of the alcohol exclusion in other cases and the requested statistical data is overly costly and unduly burdensome in light of its potential benefits, and must be denied.

---

[1] Plaintiffs' citations to cases outside the Tenth Circuit are of less assistance in resolving this issue in light of the major disagreements among the circuits about how to resolve issues in ERISA cases, in particular the scope of discovery permitted. Elizabeth J. Bondurant, *Standard of Review and Discovery After* Glenn*: The Effect of the* Glenn *Standard of Review on the Role of Discovery Involving Conflicts of Interest*, 77 DEF. COUNS. J. 120, 121 (2010); Kathryn J. Kennedy, *Judicial Standards of Review in ERISA Benefit Claim Cases*, 50 AM. U. L. REV. 1083, 1086, 1166-67 (2001).

IT IS SO ORDERED.

_____
William P. Lynch
United States Magistrate Judge

A true copy of this order was served
on the date of entry--via mail or electronic
means--to counsel of record and any pro se
party as they are shown on the Court's docket.